In the

# United States Court of Appeals

### For the Seventh Circuit

---

No. 02-1365

TINA BRINDISI, ON BEHALF
OF ROBERT BRINDISI, A MINOR,

*Plaintiff-Appellant,*

*v.*

JO ANNE B. BARNHART, COMMISSIONER
OF SOCIAL SECURITY,

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00-C-6495—**Matthew F. Kennelly**, *Judge.*

---

ARGUED SEPTEMBER 25, 2002—DECIDED JANUARY 8, 2003

---

Before BAUER, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* This is an appeal from the denial of Supplemental Security Income benefits to Robert Brindisi, a minor. Because we find that the administrative law judge's opinion does not adequately articulate the basis for the denial of benefits to Robert, we reverse the decision of the district court upholding the opinion and remand for further proceedings.

## I. BACKGROUND

Tina Brindisi applied for Supplemental Security Income ("SSI") benefits on behalf of her son, Robert, in April 1996, when Robert was four years old. Ms. Brindisi claims that Robert suffers from a hearing impairment, speech delay, oppositional defiant disorder, attention deficit disorder, hyperactivity, and separation anxiety, qualifying him as "disabled" and entitling him to SSI benefits. Robert has a history of visiting doctors and specialists for hearing and speech-related problems and has had numerous surgical procedures to place tubes in his ears. In addition, Robert began to take Ritalin in 1997, and Ms. Brindisi claims that Robert displays a variety of inappropriate acts of physical aggression, refuses to separate from her, and has poor interaction skills.

After a hearing to consider Robert's application, an administrative law judge ("ALJ") found that Robert is not disabled. Following this decision, Ms. Brindisi filed a request for review to the Social Security Administration's appeals council, which denied the request, leaving the decision of the ALJ as the final decision of the Commissioner. Brindisi then filed a complaint challenging the ruling of the Commissioner in federal court. The district court granted summary judgment in favor of the Commissioner. Brindisi filed a timely appeal with this court, asking us to review the decision of the ALJ.

## II. ANALYSIS

We must affirm the factual findings of the ALJ if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). However, where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A.  Disability determination

The Social Security Administration's determination of Robert's claim was made under the Interim Final Rules adopted by the Commissioner in accordance with the changes to children's disability benefits in the Personal Responsibility and Work Opportunity Reconciliation Act. *See* 42 U.S.C. § 1382c. Under the Act, to be considered disabled, a child must have a "physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 1382c(a)(3)(C)(I). In order to understand the ALJ's determination in this case we think it necessary to outline the process of determining disability under the new rules.

A three-step process is employed to decide whether a child is disabled. First, if the child is engaged in substantial gainful activity, his or her claim is denied. 20 C.F.R. § 416.924(a). Second, if the child does not have a medically determinable "severe" impairment or combination of impairments, then his or her claim is denied. *Id.* Finally, for a child to be considered disabled, the child's impairment(s) must meet, medically equal, or functionally equal the requirements of a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* To find an impairment functionally equivalent to a listing, an ALJ must analyze its severity in five age-appropriate categories and find an "extreme" limitation in one category or a "marked" limitation in two categories. 20 C.F.R. § 416.926a(a).[1] It is at this third step—determining whether Robert's impair-

---

[1]  For children ages three to six, an ALJ examines the categories of limitation including cognition/communication, motor skills, social skills, personal skills, and concentration/persistence/pace. 20 C.F.R. § 416.926a(g)-(1).

ments meet or medically equal a listing or are functionally equivalent to a listing—that the ALJ determined Robert is not disabled.

We begin our discussion with the ALJ's finding that Robert's impairment does not meet nor is medically equal to a listing. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "listings"). Robert applied for benefits under three listings: 102.08 (hearing impairments), 112.06 (anxiety disorders),[2] and 112.11 (attention deficit hyperactive disorder).[3] *See id.* The ALJ's finding that Robert did not qualify as disabled because he did not meet listing requirements 102.08, 112.06, or 112.11 is extremely brief:

> The claimant has a combination of severe impairments which include: speech and language delays, recurrent otitis media, and ADD. However, none of these impairments meet the requirements of an impairment listed in Appendix 1 to subpart P of regulation no. 4.

We find this conclusion to be devoid of any analysis that would enable meaningful judicial review. *See Steele*, 290 F.3d at 940. First, the ALJ's opinion does not even men-

---

[2] Listing 112.06 requires medically documented findings of one of several factors, including "excessive anxiety manifested when the child is separated" from a parent. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.06. The anxiety must result in at least two of the age-specific findings listed in § 112.02(B)(2): marked impairment in cognitive/communicative function, marked impairment in social functioning, marked impairment in personal functioning, and marked difficulties in maintaining concentration, persistence, or pace. *Id.* at § 112.02(B)(2).

[3] Listing 112.11 compels findings of marked inattention, marked impulsiveness, and marked hyperactivity resulting in at least two of the age-specific findings listed in § 112.02(B)(2). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.11.

tion the specific listings under which it considered Robert's impairments. As we have recently noted, failure to discuss or even cite a listing, combined with an otherwise perfunctory analysis, may require a remand. *Id.* at 936. The omission of any discussion of Robert's impairments in conjunction with the listings frustrates any attempt at judicial review, especially in a case such as this where a claim is made under three different listings. Such a lack of reasoning prevents us from applying the decision structure undergirding disability determinations to a substantive analysis of Robert's impairments. *See Scott*, 297 F.3d at 595 (failure to reference the listing left the court with "grave reservations as to whether [the ALJ's] factual assessment addressed adequately the criteria of the listing").

In addition, the ALJ's opinion does not sufficiently discuss the conflicting evidence regarding Robert's impairments. Most significantly, the opinion fails to mention the strongest piece of evidence supporting Robert's claim for benefits under the listing for hearing impairments—an audiogram administered on December 18, 1995. In order to meet listing 102.08, Robert must have an "inability to hear air conduction thresholds at an average of 40 decibels or greater in the better ear, and a speech and language disorder which significantly affects the clarity and content of the speech." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 102.08(B)(3). The December 1995 audiogram found Robert had a hearing level of an average of 50 decibels in his right ear and 40 decibels in his left ear. The parties disagree as to whether these results meet the criteria of listing 102.08 or fall just short. The fact that the parties agree that Robert meets the second half of the listing, a significant speech disorder attributable to his hearing impairment, only increases the importance of the consideration of this audiogram. Yet the ALJ's opinion is silent as to this critical piece of evidence, despite the

ALJ's duty to acknowledge potentially dispositive evidence, *Stephens v. Heckler*, 766 F.2d 284, 288 (7th Cir. 1985), since "[t]he ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do." *Id.* at 287. Without even a mention, we are left to wonder whether the audiogram was even considered. Here the ALJ should have discussed not only the results of the December 1995 audiogram, but also whether those results meet the requirements of listing 102.08.

While the ALJ's discussion of whether Robert functionally equals a listing is lengthier, even here the opinion's failure to clearly identify which impairments were considered leaves us without means to review its conclusion. Of course an ALJ, when considering whether a child is disabled under a functional analysis, must consider the combined effect of the impairments. 24 C.F.R. § 926a(a); *Sims v. Barnhart*, 309 F.3d 424, 432 (7th Cir. 2002); *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000); *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000). The ALJ determined that Robert has a marked limitation in the area of cognitive/communication development; less than a marked limitation in personal development, social development, and concentration/persistence/pace; and no evidence of limitations in his motor development. In considering each area of functioning, however, the ALJ appears to have alternated between discussion of Robert's hearing and speech impairments and those related to his behavioral problems. For example, the ALJ's conclusion about Robert's limitation in cognition/communication development does not discuss the impact of Robert's behavioral impairments on his functioning, despite an acknowledgment that several language evaluations were hampered by Robert's poor cooperation. Similarly, the ALJ states that his analysis of Robert's social development accounts for both behavioral and speech and hearing impairments,

but his discussion focuses exclusively on Robert's hyperactivity and attention difficulties. We recognize that even a "sketchy opinion" is sufficient if it assures us that an ALJ considered the important evidence and enables us to trace its reasoning. *Stephens*, 766 F.2d at 287. But in this case, the conclusory and conflated analysis prevents this court from finding that substantial evidence supports the ALJ's conclusions.

### B. Credibility determination

The ALJ's opinion is also seriously deficient in its evaluation of the Brindisis' testimony at the hearing. In evaluating the credibility of statements supporting a Social Security application, we have noted that an ALJ must comply with the requirements of Social Security Ruling 96-7p. *Steele*, 290 F.3d at 942. SSR 96-7p requires ALJs to articulate the reasons behind credibility evaluations:

> The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

1996 WL 374186, at *4 (S.S.A. July 2, 1996).

The ALJ's opinion describes the Brindisis' testimony as generally, but not fully, credible. The entire credibility evaluation reads:

> In considering the claimant's functioning and the areas of development, the undersigned has considered the testimony of the claimant and his mother, and find it generally credible. However to the extent that the claimant's parents alleged total disability, the undersigned do not find them fully credible, as it is not supported by the objective medical evidence and other evidence of record (SSR 96-7p and 20 CFR 416.929).

This is precisely the kind of conclusory determination SSR 96-7p prohibits. Indeed, the apparently post-hoc statement turns the credibility determination process on its head by finding statements that support the ruling credible and rejecting those statements that do not, rather than evaluating the Brindisis' credibility as an initial matter in order to come to a decision on the merits. Specifically, the ALJ does not explain the weight given to the Brindisis' statements and does not support its determination with any evidence in the record. In short, the determination is lacking any explication that would allow this court to understand the weight given to the Brindisis' statements or the reasons for that consideration as required by SSR 96-7p.

We find it particularly troubling that the determination references Robert's credibility even though only Mr. and Ms. Brindisi, and not Robert, testified at the hearing. Indeed, the ALJ commented on Robert's silence during the hearing, stating: "[T]his may be the only child that age that has never spoken up. They all at least will say something." This error only underscores our concern about the brevity and conclusory nature of the credibility determination. *See Herron v. Shalala*, 19 F.3d 329, 336 (7th Cir. 1994) (remanding determination when credibility finding was based on facts that did not exist).

### III. CONCLUSION

In arriving at our conclusions about the deficiencies in the ALJ's opinion we make no finding as to the merits of Robert's SSI claim. We think it unfortunate that, by our calculations, Robert is now ten years old and has not yet received a final determination on his claim. However, we find the weaknesses of the ALJ's opinion preclude any meaningful judicial review. Therefore, the judgment of the district court is REVERSED, and the case is REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

A true Copy:

       Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*