**Robert F. KONKOL, Plaintiff–Appellant,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant–Appellee.**

No. 03–1904.

United States Court of Appeals, Seventh Circuit.

Argued Aug. 5, 2003.

Decided Sept. 17, 2003.

Dana W. Duncan, Schmidt, Grace & Duncan, Wisconsin Rapids, WI, for Plaintiff–Appellant.

Anne K. Kleinman, Danielle A. Pedderson, Social Security Administration, Chicago, IL, for Defendant–Appellee.

Before EASTERBROOK, ROVNER, and DIANE P. WOOD, Circuit Judges.

## ORDER

Robert Konkol has appealed from the district court's affirmance of the Social Security Administration's decision to deny him disability benefits. The agency's reason was that despite Konkol's disabilities, work remains in the national economy that he is capable of performing, and thus he cannot meet step five of the test used by the SSA to determine eligibility. See 20 C.F.R. § 404.1520. Before this court, Konkol urges that the administrative law judge erroneously concluded that he was not disabled, in the face of substantial evidence to the contrary, and that the ALJ in essence asked the vocational expert the wrong hypothetical question with respect to the availability of jobs, and thus got the wrong

answer. In our view, however, the ALJ in fact gave Konkol the benefit of the doubt with respect to his claimed disability and did not otherwise commit reversible error. We therefore agree with the district court that the agency's decision must be affirmed.

I

Konkol is a 57–year–old high school graduate who worked for 26 years as a truck driver for United Parcel Service (UPS). In August 1995, he began experiencing blurred vision in his right eye. He saw an optometrist (Dr. Jeffrey Byers) for that problem, who was able to correct his vision to 20/20. Three years later, in August 1998, his vision in the right eye again began to deteriorate. At that point, he was referred to an ophthalmologist (Dr. Frederick Reeser), who diagnosed macular degeneration, an incurable disease that causes blind spots in a person's central vision. Dr. Reeser noted at the same time that Konkol's left eye was fine.

Notwithstanding his unimpaired vision in his left eye, Konkol lost his commercial driver's license in March 1999, because by that time he was legally blind in the right eye, and as a result he failed the Department of Transportation vision test UPS required for its drivers. This ended Konkol's career with UPS.

Over time, the vision in his right eye worsened, but the left eye remained normal. He visited a number of doctors, all of whom confirmed that the macular degeneration had drastically reduced the central vision field in his right eye. His wife, Diane, submitted a report indicating that his daily activities had been somewhat affected by his *de facto* monocular vision. On the positive side, he was able to walk, sweep floors, clean dishes, perform yard work, ride a four-wheeler, drive his car (because he still held a regular driver's license), cook, and babysit his grandchildren. On the negative side, he could read only for short periods of time, because his eye(s) tired easily. Konkol's family doctor (Dr. Andrew Braun) reported in May 2000 that he had also developed some depression requiring medication. In September 2001, Dr. Byers completed a form entitled "Medical Source Statement of Ability to Do Work–Related Activities (Physical)." He indicated that he was not qualified to opine about any limitations on Konkol's exertional abilities, noting only that Konkol's lack of depth perception made it inadvisable for him to perform tasks that required frequent climbing or balancing. He also noted that Konkol could perform tasks requiring gross or fine manipulation "occasionally," rather than "frequently" or "constantly." His sense of touch was unimpaired. Finally, he highlighted the lack of depth perception as a problem that precluded jobs involving hazardous machinery or heights.

Konkol applied for disability benefits in April 1999, claiming an onset of disability of February 18, 1999. His application was denied, and he was also unsuccessful on reconsideration and after an administrative hearing. The Appeals Council, however, granted his petition for review, and it remanded the case to the ALJ so that Dr. Braun's letter could be considered and so that evidence from a vocational expert regarding the impact of his nonexertional limitations on his ability to work could be obtained. The Appeals Council also ordered the ALJ to ask the vocational expert whether the evidence in the record conflicted with the Department of Labor's *Dictionary of Occupational Titles* ( the *Dictionary* ).

As ordered, the ALJ held a new hearing on remand. Konkol himself testified that he had no problems with his left eye, but that he experienced numerous practical

difficulties because of the right-eye blindness. Dr. Karl Botterbusch was the vocational expert who testified. The ALJ had the following exchange with him:

Q: I want you to assume an individual of the Claimant's age, education, past work experience. Assume that the individual is precluded from any more then [sic] occasional stair climbing. Assume also that the individual is precluded from work at unprotected heights or around dangerous machinery. *Finally assume the individual is precluded from work requiring binocular vision or visual depth perception.* Considering all these factors could this individual perform the Claimant's past work?

A: He would not be able to.

Q: And are you aware of other jobs existing in the State of Wisconsin such an individual could perform?

A: Yes.

(Emphasis added.) Dr. Botterbusch explained that such a person could perform approximately 12,500 jobs in Wisconsin and 546,000 jobs nationwide, including jobs as a folding machine operator, photocopy machine operator, food assembler, and machine feeder. Neither side thought to ask him whether the evidence he had given conflicted in any way with the *Dictionary*.

Following the prescribed five-step analysis for disability claims, the ALJ concluded that (1) Konkol was not currently employed, (2) his vision problem was a severe impairment, (3) the impairment was not conclusively disabling, (4) he could not perform his past work, but (5) there were other jobs in the national economy that were available to him. The last of those findings meant that Konkol's petition for benefits was once again unsuccessful, and this time, the Appeals Council denied his request for review.

## II

Konkol raises the following six arguments on this appeal: (1) the ALJ's disability determination was not supported by substantial evidence, because it failed to account for his severe nonexertional limitations, (2) the ALJ was required under various Social Security Rulings to find that Konkol was disabled, (3) the hypothetical question posed to the vocational expert failed to include all of the relevant nonexertional limitations, (4) the ALJ violated S.S.R. 00–04p by failing to ask the expert whether his evidence conflicted with the *Dictionary*, (5) the case should be remanded to consider new evidence, and (6) the ALJ failed to articulate the reasons for discrediting Konkol's testimony. In our view, several of these issues essentially ask in different ways whether the ALJ adequately took into account Konkol's description of the difficulties he experienced because of his monocular vision. We therefore address that point, and then Konkol's remaining arguments, bearing in mind that we may reverse the findings of the Commissioner only if they are not supported by substantial evidence or if they are the result of an error of law. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir.2002).

■ Konkol's arguments about the ALJ's ultimate disability determination, the hypothetical question posed to the ALJ, and the ALJ's alleged improper credibility determination all turn on a premise that the record does not bear out. All assume that the ALJ rejected his evidence that he had monocular vision and that the result of this physical condition was significantly impaired depth perception. But the ALJ did no such thing. The hypothetical question reproduced above specifically asked the vocational expert to

exclude any job that requires either visual depth perception or binocular vision. Problems with reaching and handling small objects that are related to a lack of depth perception were automatically reflected by this question and by the underlying fact-finding that it implies. Even now, Konkol does not argue that he also had some kind of neuromuscular problem that affected his motor coordination, or any similar condition.

Konkol also complains that the ALJ failed to give proper weight to the opinion of his treating physician, Dr. Byers, but there again a careful reading of the record shows that there was no serious discrepancy between Dr. Byers' opinion and what the ALJ credited. Dr. Byers himself disclaimed any expertise about exertional limitations, and the ALJ fully accounted for the manipulative limitations Dr. Byers noted that resulted from the monocular vision.

With respect to the credibility determination, Konkol argues that the ALJ failed entirely to explain why he was discrediting Konkol's own testimony regarding his limitations and impairments. If the ALJ had failed to do so with respect to a material question, then Konkol would have a good point. This court, in *Brindisi v. Barnhart,* 315 F.3d 783 (7th Cir.2003), made it clear that S.S.R. 96–7p obligates an ALJ to give specific reasons for his or her evaluation of a claimant's credibility. *Id.* at 787–88. But nothing in S.S.R. 96–7p requires the ALJ to resolve every credibility issue, no matter how peripheral or immaterial to the ultimate decision. Thus, the real issue before us is to ask what issue the ALJ failed to evaluate, and whether it was important in the end. The ALJ made the following statement about Konkol's testimony:

I find that the claimant's subjective complaints and allegations about his limitations and impairments are not fully

credible and, when considered in light of all the objective medical evidence and clinical findings as well as the record as a whole, do not reflect an individual who is so impaired as to be incapable of engaging in any substantial gainful work activity.

If the question before us were whether Konkol had limitations because of his vision impairment, this finding may well have been relevant. And if it were relevant, we are inclined to agree with Konkol that it fails to meet the standard we set forth in *Brindisi.* But the ALJ's failure to explain himself more fully did not matter here, for the simple reason once again that no one assumed that he could perform tasks for which binocular vision and reasonably good depth perception were required. In the absence of any evidence that Konkol had impairments other than his lack of depth perception and monocular vision—and the disputed testimony would not have amounted to such evidence—there was nothing else the ALJ was required to do.

We can be brief with respect to Konkol's other arguments. He claims that under S.S.R. 96–9p, S.S.R. 85–15, or S.S.R. 83–14, each mandate a finding that he is disabled. We disagree. The first one, S.S.R. 96–9p, guides disability determinations for individuals who cannot perform a full range of sedentary work. The ALJ found that Konkol could perform work at all exertional levels, however, and he does not challenge that finding. S.S.R. 85–15 is similarly inapplicable to his case. It states that a finding of disability could be appropriate for people with exceptionally adverse vocational prospects, such as those approaching retirement age or those with a very limited education. Konkol does not match that profile. Finally, S.S.R. 83–14 applies only to people who are limited to light and medium work. We note as well

**534**

that the record does not show that Konkol's visual impairment makes him unable to detect approaching objects. He still drives, hunts, shaves, and mows the lawn, even if he also trips over objects and has difficulty navigating stairs.

■ As for the ALJ's failure to follow up on the compatibility between the expert's testimony and the *Dictionary,* we find that Konkol forfeited the opportunity the Appeals Council gave him to pursue this argument. Even though, under *Donahue v. Barnhart,* 279 F.3d 441, 446 (7th Cir.2002), an ALJ must ask a vocational expert how she reached her conclusions and whether her assessments conflict with the *Dictionary,* see also S.S.R. 00–04p, that duty arises only if the claimant (or his counsel) explores a discrepancy. Otherwise, the ALJ is entitled to accept the expert's conclusion. *Id.* Finally, Konkol offers no reason why this case should be remanded to the Commissioner for consideration of new, material evidence under sentence 6 of 42 U.S.C. § 405(g), nor does he identify what evidence he would like to submit. Under the circumstances, this option was also forfeited.

### III

This record contains the required substantial evidence supporting the ALJ's determination that Konkol's visual impairment, while serious, did not preclude him from obtaining other jobs in the national economy, and thus he failed to meet the statutory standard for disability benefits. We therefore AFFIRM the judgment of the district court upholding the Commissioner's decision.