Sandra COLLINS, Plaintiff–Appellant,

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant–Appellee.

No. 04–1215.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 20, 2004.

Decided Oct. 27, 2004.

Barry A. Schultz, Evanston, IL, for Plaintiff–Appellant.

Sara E. Zeman, Social Security Administration Office of the General Counsel, Region V, Chicago, IL, for Defendant–Appellee.

Before POSNER, KANNE, and EVANS, Circuit Judges.

### ORDER

Sandra Collins applied for social security disability insurance benefits in 2000, claiming she was disabled because of scleroderma and Raynaud's phenomenon. Collins' claim was denied initially, upon reconsideration, and after a hearing by an administrative law judge. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner of Social Security. Collins appealed to the district court, which affirmed, and she is here today asserting that the ALJ's misunderstanding of her medical condition resulted in incorrect determinations as to treating physicians' opinions, Collins' credibility, and the evaluation of her Residual Function Capacity ("RFC").

Collins suffers from diffuse scleroderma and Raynaud's phenomenon. Scleroderma is characterized by a thickening and hardening of the skin. *See* STEDMAN'S MEDICAL DICTIONARY 1604 (27th ed.2000). Ray-naud's, termed a "phenomenon" when symptoms are accompanied by another disease such as scleroderma, is a condition that leads to "spasm of the digital arteries, with blanching and numbness or pain of the fingers, often precipitated by cold. Fingers become variably red, white, and blue." *Id.* at 1365.

Although Collins first reports experiencing Raynaud's phenomenon in the mid–1980s, she does not characterize the condition as bothersome until November 1992, just before the diagnosis of scleroderma. Within six months, she claims that the combination of conditions rendered her disabled on March 13, 1993, the day she left her last part-time job as a waitress. Her insured status under Title II of the Social Security Act terminated on September 30, 1995, and therefore she must show that she was disabled as of that date in order to qualify for benefits.

The first notation in the record reflecting that Collins might suffer from Raynaud's phenomenon was made in 1992 by Dr. Warren Brauer, one of Collins' treating physicians affiliated with the Marsho Family Medical Group ("Marsho Clinic") in Sheboygan, Wisconsin. Dr. Brauer observed symptoms indicative of the condition, although these observations were unsupported by medical tests. During the same period Collins was also under the care of Dr. Dale Buegel, a physician whom Collins had seen since 1989 and whom she alternately described as a "psychiatrist by his Degree."

In 1993, Dr. Buegel referred Collins to Dr. Sanford Baim, a rheumatologist with Columbia Hospital in Milwaukee. Dr. Baim was the first physician to form a diagnosis based on both clinical and laboratory findings. After examining Collins and reviewing her positive Antinuclear Antibody ("ANA") and rheumatoid factor

blood tests, Dr. Baim diagnosed Collins in April 1993 with scleroderma and accompanying Raynaud's phenomenon, with associated telangiectasia and sclerodactyly. His findings prompted additional testing to exclude the possibility that her condition affected her major organs. In those tests, the only additional abnormality detected was a slight mitral valve regurgitation. Collins was also seen in the Occupational Therapy Unit of Columbia Hospital in July, when her grip strength was measured at sixty-five pounds and her pinch strength between nineteen and twenty pounds.

Following her consultation with Dr. Baim, Collins' other doctors continued to report symptoms consistent with scleroderma and Raynaud's phenomenon. In August 1993, Dr. Buegel noted swelling in her hands, although he also stated that it had improved. The following year, in February 1994, Dr. Buegel remarked that Collins had purple and swollen fingers. Later that year, while examining Collins' wrist, Dr. Siefert of the Marsho Clinic observed tenderness along Collins' forearm resulting from an injury she sustained while holding the reins of one of the horses that she owned and maintained. During the examination Dr. Siefert observed "purplish discoloration of the distal extremities," and Collins reported that air conditioning brought on coldness in her fingers. Despite the condition, Collins declined the drug treatment Nifedipine offered by Dr. Siefert, choosing instead to continue pursuing homeopathic remedies. Shortly before the expiration of her insured status, Collins again returned to Dr. Buegel in April 1995 complaining of chest discomfort and difficulty breathing. However, Dr. Buegel also noted that Collins was shoveling snow during this period.

At her hearing before an ALJ in 2002, Collins asserted generally that her condition had deteriorated and that she was unable to work. She testified that her symptoms had worsened since 1993, the date of her last employment, and said that she could not return to work because of a host of infirmities, including ulcerations that sometimes opened on the tips of her fingers, reduced mobility and dexterity, reduced lung capacity causing fatigue, and muscle spasms. Besides her own testimony regarding her medical history and disability, Collins submitted letters from Drs. Brauer and Buegel describing her condition and concluding that she has been unable to work since 1993.

Applying the five-step disability analysis defined in 20 C.F.R. § 404.1505 and explained in § 404.1520, the ALJ concluded that Collins was not disabled. The ALJ determined that Collins had not been gainfully employed since 1993, that she suffered from Raynaud's phenomenon and mild scleroderma up to September 1995, that the degree of her "impairment or combination of impairments" was not listed in or medically equivalent to a listing in 20 C.F.R. pt. 404, subpt. P., app. 1, and that she retained the RFC through September 30, 1995 to perform her past relevant work.

In making this determination, the ALJ discredited Collins' complaint that her pain was severe or limiting, noting "clear elements of exaggeration and secondary claim present." The ALJ added that her only limitations were from exposure to "cold extremes and vibration," and that her past relevant work experience as "an accounts payable clerk, secretary, clerical assistant, waitress, and sales clerk did not require any of the above limitations."

We will uphold the decision of an ALJ if the correct legal standard was applied and the decision is supported by substantial evidence. *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir.2002). Substantial evi-

dence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir.2000) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). To determine whether the ALJ has met this burden, we will engage in a "commonsensical reading [of the decision], rather than nitpicking at it." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir.2000).

Collins first argues that she was entitled to disability benefits because her treating physicians determined that her conditions prevented her from working. She asserts that Drs. Buegel and Brauer based their opinions on a continuing treatment relationship with her dating back to the insured period and that the opinions are not inconsistent with the medical evidence. Therefore, she suggests that the ALJ should have classified the opinions as treating source opinions and accorded them controlling weight.

Treating physician's opinions are entitled to controlling weight if they are well supported and "not inconsistent with the other substantial evidence in the case record." 20 C.F.R. § 404.1527(d)(2); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). However, because a treating physician's objectivity is often difficult to determine, a patient is not entitled to benefits simply because a physician reaches the conclusion that the patient is disabled. *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir.2001); *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir.1995).

■ Substantial evidence here supports the ALJ's decision not to accord controlling weight to the opinions of Collins' doctors that she was disabled. The ALJ based this determination on his own reading of the record and the opinion offered by Wisconsin Disability Determination Service ("DDS"). Dr. Brauer's opinion,

for instance, contradicted treatment notes from the relevant period that do not record the limitations on which Collins later based her disability claim. Although he did refer to both Raynaud's phenomenon and scleroderma in his treatment notes prior to 1995, these references were made while Collins was examined for cold and flu-like symptoms, including sore throat and fever. The passing references do not describe any exertional limitations to support the conclusion of complete disability that Dr. Brauer reached in 2001.

■ As for the opinion of Dr. Buegel, the ALJ did not specifically reject it but correctly assigned it less weight because it too was inconsistent with contemporaneous evidence. Dr. Buegel stated in 2001 that Collins "has been unable to work since 1993," but this legal conclusion is inconsistent with his treatment records, which note only minor complications before September 1995 that are related to scleroderma and Raynaud's phenomenon, like swelling in the fingers that improved after treatment. The ALJ accurately described the lack of exertional limitations recorded in Collins' medical record and appropriately relied on the nonexamining source opinion of Wisconsin DDS. *See Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir.2004); *Scott v. Sullivan*, 898 F.2d 519, 524 (7th Cir.1990).

■ Collins next argues that the ALJ's credibility determination is flawed because it failed to follow Social Security Ruling 96–7p, which requires the ALJ to evaluate a claimant's credibility in light of medical evidence, opinions of medical sources, and other statements by the claimant and her physicians. She argues that the ALJ did not substantiate his credibility determination with references to medical evidence in the record, and instead selectively relied on insignificant or medically reasonable in-

consistencies between her testimony regarding daily activities and her inability to return to work.

Credibility determinations by an ALJ are afforded "special deference" because of the ALJ's unique ability to observe and evaluate testimony. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir.2000) (citations omitted). However, an ALJ's decision must be sufficiently specific to enable meaningful appellate review, *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir.2003), and must not be "patently wrong," *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir.1990).

The ALJ correctly reviewed the medical evidence in the record and Collins' testimony to reach the conclusion that she was not credible. He highlighted inconsistencies in Collins' testimony by evaluating her work with horses, her household activities, and the demands of her prior jobs in order to conclude that she did not reliably testify regarding the extent of her limitations. Although scleroderma and Raynaud's phenomenon can cause the degree of pain and limitations that Collins asserted in her testimony, the existence of these conditions alone does not prove that the conditions so functionally limited her as to rendered her completely disabled during the relevant period. The ALJ's references to household and equine tasks inconsistent with Collins' claim of disability demonstrates that the credibility finding is supported by the record and not patently wrong. *See Powers*, 207 F.3d at 435. The discussion is also sufficiently specific to address our concern in *Brindisi*, 315 F.3d at 787, that an adverse credibility determination articulate reasons to support the finding.

■ Finally, Collins suggests that the ALJ did not comply with Social Security Ruling 96–8p, which requires the ALJ to evaluate all the relevant evidence in the record in order to conduct a function-by-function analysis of a claimant's capacity for work, know as the claimant's Residual Function Capacity ("RFC"). Collins argues that her RFC did not include the exertional and manipulation limitations she described in her testimony, including her fatigue and inability to manipulate objects normally encountered in clerical work. If these limitations had been incorporated into the RFC, Collins argues, then the ALJ would not have been able to determine she could return to her past work as a clerk.

The initial burden is placed on Collins to establish that she could no longer return to her past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). Although "an ALJ may not ignore an entire line of evidence that is contrary to her findings," *Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir.1999) (citation omitted), it is sufficient for the ALJ to "articulate, at some minimum level, her analysis of the evidence," *Dixon*, 270 F.3d at 1176.

The ALJ met his burden under Social Security Ruling 96–8p by describing the limitations from exposure to cold temperatures and vibration attributable to Collins' medical conditions, the activities she continued to engage in after ceasing employment, and the requirements of her past work experience. Based on the treatment records from the relevant period and the activities in which she continued to engage, the ALJ correctly found that Collins' conditions did not impose exertional limitations as of September 1995 and she therefore could return to her past work.

■ Although it is unclear if the ALJ should have taken administrative notice of the light exertional requirements of Collins' previous jobs as they are normally performed in the national economy without citing a vocational manual as a basis for this notice, the ALJ's RFC finding does

not limit Collins to light exertional work. *See* 20 C.F.R. § 404.1567 (describing the requirements of light exertional work). Rather, the ALJ's findings only limited Collins from work involving exposure to cold and vibration. Regardless of whether her past jobs are classified as light exertional as normally performed, the ALJ's discussion of Collins' functional limitations is sufficient to support the finding that she could perform her past jobs as she described those jobs. Therefore, we do not agree that Collins' RFC was improperly reached and find that substantial evidence supports the ALJ's determination.

AFFIRMED.