In the

# United States Court of Appeals

## For the Seventh Circuit

No. 03-3830

C. ETTA RICE,

*Plaintiff-Appellant,*

*v.*

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 02 C 2188—**Michael P. McCuskey**, *Judge.*

ARGUED JUNE 1, 2004—DECIDED SEPTEMBER 14, 2004

Before EASTERBROOK, KANNE, and ROVNER, *Circuit Judges.*

KANNE, *Circuit Judge.*

## I. Background

To be eligible for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and supplemental security income under Title XVI of the Act, §§ 1382, 1382c, a claimant must prove she is unable to

engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 432(d)(1)(A), 1382c(a)(3)(A). The Commissioner of the Social Security Administration uses a five-step sequential analysis to ascertain whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f); *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001). Steps one and two are threshold determinations and assess first, whether a claimant is not presently working, and second, whether the complained- of impairment(s) are of the required duration and significantly limit the claimant's ability to work. 20 C.F.R. §§ 404.1520(a)-(c), 416.920(a)-(c). In step three, evidence demonstrating the claimant's impairments is compared to a list of impairments presumed severe enough to preclude any gainful work. *See* 20 C.F.R. pt. 404, subpt. P, App. 1 ("listing of impairments"). Where an impairment meets or equals one of the listed impairments, the claimant qualifies for benefits and no further inquiry is necessary. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant is not able to qualify for benefits under step three, the analysis proceeds to steps four and five. The fourth step requires an assessment of whether the claimant's residual functional capacity[1] will allow the claimant to pursue her past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). Where the impairment precludes the performance of past work, the claimant's RFC, age, education, and work experience are considered to determine if other work exists that would accommodate the claimant. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Rice was born on August 13, 1945. She graduated from high school and is a certified nursing assistant. She has worked in the past as a nursing assistant and babysitter.

---

[1] The residual functional capacity denotes what a claimant can still do, despite his or her limitations. 20 C.F.R. § 404.1545(a).

After injuring her back while lifting a patient in an elderly nursing facility in 1985, she received disability insurance benefits between 1988 and 1994, when she returned to substantial gainful employment at a homeless shelter.

On October 29, 1998, Rice applied for disability insurance benefits and supplemental security income, claiming she became disabled on October 25, 1998 due to back and related leg pain, the result of her 1985 injury and a subsequent fall. Rice's applications were denied initially and upon reconsideration. On November 18, 1999, a hearing was held before an administrative law judge ("ALJ").

### A.   Testimony before the ALJ

At the hearing, Rice testified generally about her age, educational level, job history, and medical history. Specifically, she described two previous back surgeries in 1985 and 1988. She indicated that after being on disability benefits, she returned to work as a day care provider, only to suffer a fall in 1994. One month after the fall, due to a pronounced limp and an inability to lift heavy objects, Rice testified it became impossible for her to continue working as a babysitter. She was unemployed from 1994 until 1997, when she began working part-time at a homeless shelter. Her employment there, which included meal preparation, cleaning, and supervision of the clients, ended in October of 1998 when her "legs gave out," causing her to fall on the stairs. As a result, she testified, she resigned.

Rice also spoke specifically about her back and leg pain. Rice testified that the primary source of a constant, toothache-type pain, occasionally aggravated by cold weather, was her lower back. However, she described how certain activities cause pain to radiate to other parts of her body. After sitting for a certain amount of time, Rice testified that her leg will go numb. And after standing for a period of time, Rice indicated that she experiences pain between her

shoulder blades and neck, as well as pain down her legs, particularly her right leg, sometimes causing numbness in her toes. Moreover, she complained that she must sleep in an upright position.

In terms of medication and other treatment for the pain, Rice indicated that for approximately one month she had been taking Tylenol-3 every six hours and that previously, she took Darvoset. To counter inflammation, she had been taking Lodine since 1997. She also indicated that she does not use a cane, brace, or other support device aside from a home-fashioned walking stick, used only occasionally in cold weather. Rice used no assistive device on the day of the hearing.

Rice also testified that she had been living by herself for the past three years. She stated that while her children assist her from time to time, she occasionally cooks for herself and does a daily load of laundry, necessitating one difficult trip up and down a flight of stairs. She also goes grocery shopping with assistance, washes dishes, and takes out the garbage. In addition, she testified that she reads and attends church services three to four Sundays a month, sings in the choir, and attends choir practices. She also stated that she enjoys watching television, although it is difficult for her to sit through an entire program. Rice testified that she is able to bathe herself, but that she has problems getting out of the bathtub and therefore takes showers. She also stated that she can dress herself and put on shoes and socks without a problem. Finally, she indicated that although she has a driver's license, she had not driven since October based upon a recommendation by her neurologist, Dr. Wayne D. Kelly.

### B.  Evidence submitted to the ALJ

The medical evidence submitted on behalf of Rice was

extensive. However, it revealed marked differences of opinion among health care professionals. We summarize the evidence, for simplicity purposes, according to the treating physician.[2]

### 1.  Dr. David L. Pohl

Dr. Pohl reported that an October 20, 1995 magnetic resonance imaging ("MRI") of Rice's lumbar spine showed postoperative changes at the L5 level. At the L5-S1 level, Dr. Pohl noted degenerative changes and scar tissue, but he also indicated that the abnormalities may be the result of a recurrent herniated nucleus pulposus (slipped disk).

### 2.  Dr. Donald G. Rumer

Dr. Rumer examined Rice on February 4, 1997. He noted that a 1985 accident resulted in a herniated disk, which was treated with chemonucleolysis, and that, in 1998, Rice underwent a bilateral laminectomy with a total laminectomy at L5 and exploration and neurolysis of the first and second sacral nerve roots. He also made the following findings:

---

[2]  Because the Appeals Council eventually refused Rice's request to review the ALJ's unfavorable decision, we note that it is not appropriate for us to consider evidence which was not before the ALJ, but which Rice later submitted to the Appeals Council (or any argument based upon such evidence). *See* 42 U.S.C. § 405(g); *Eads v. Sec. of Dep't of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993), cited in *Wolfe v. Shalala*, 997 F.2d 321, 322 n.3 (7th Cir. 1993). Although technically a part of the administrative record, the additional evidence submitted to the Appeals Council, (R. 10 at 366-438), cannot now be used as a basis for a finding of reversible error.

- positive Lesegue's sign[3]
- possible atrophy of the right calf, measuring sixteen inches compared to sixteen and a half inches on the left
- absent patellar reflexes
- trace Achilles reflex on left
- absent Achilles reflex on right
- tender posterior spine

He diagnosed Rice with traumatic lumbodorsal fascitis (the chronic phase of an acute lower back strain) and aggravation of postlaminectomy syndrome.

### 3.  Dr. D. Patel

Dr. Patel, Rice's family doctor, completed a "Spinal Disorders" questionnaire upon request on November 20, 1998. In it, he noted that Rice had degenerative joint disease, but had no atrophy and could walk without assistance. He also indicated that no nerve root compression was present and that Rice did not have any limitations in her range of motion in her cervical spine or her lumbosacral spine. Dr. Patel also reported that sitting or walking for more than one-half hour worsened Rice's pain and that Rice was "unable to lift." Dr. Patel's office notes also refer to Rice's complaints of constant toothache back pain and burning pain and numbness in her right leg, for which Dr. Patel referred Rice to Dr. Wayne D. Kelly, a neurologist.

---

[3]  This refers to the results of a test which, when positive, eliminates a disease of the hip joint as the cause of painful hip flexion when the knee is extended, indicating instead lumbar root or nerve irritation as the cause.

### 4. Dr. Wayne D. Kelly

Dr. Kelly, neurologist, treated Rice beginning in April of 1999. His records reveal the following results and diagnoses:

- April 23, 1999 exam revealed bilateral 2+ symmetrical patellar reflexes, decreased pin prick sensation in the right entire leg, positive mild weakness in the tibial anterior muscle and peroneous longus, positive lumbosacral paraspinal muscle spasm with stiffness and difficulties getting straight up out of couch, and slightly antalgic gait.

- April 30, 1999 electromyogram ("EMG") was consistent with chronic bilateral L5-S1 polyradiculopathy, with evidence of axonal involvement, as well as a (right) superimposed mild right compression/entrapment peroneal neuropathy at the fibular head, and evidence of mildly slowed nerve conduction velocity across the fibular head. No electro-physiological evidence of an underlying sensory/motor polyneuropathy.

- July 7, 1998 MRI showed left paracentric L3-4 disc herniation with compression of left L4 nerve root, a central L5-S1 disc herniation, left herniated disk at L3-4, small central herniated disk at C2-3, C3-4, and C4-5 with cervical radiculopathy, and a bone spur at C5-6.

- June 15, 1999 and August 4, 1999 Rice reported that epidural steroid injections helped reduce her back pain "a lot," but only lasted for about 2 months. She also reported difficulty sleeping, walking, and sitting because of pain, including leg and neck pain. She declined a trial treatment of steroid injections for her neck. Dr. Kelly noted that Rice had C2-3 and C3-4 small herniated disks, with a bone spur at C5-6; secondary radioculopathy with cervicalgia; L5 lumbar radiculopathy, with chronic pain not responsive to long-run treatment so far; and a sleeping disorder.

• September 3, 1999 Dr. Kelly reported that Rice's chronic cervical and lumbosacral radiculopathies had been "recalcitrant to treatment so far" and also indicated that Rice had a sleeping disorder, likely secondary to sleep apnea.

### 5.   St. Mary's Hospital Physical Therapy

Dr. Kelly recommended physical therapy for Rice. Between August 9, 1999 and September 1, 1999, Rice underwent six therapy sessions. The physical therapist noted significantly reduced range of motion and muscle weakness. (R. 10 at 329-41.)

### 6.   Dr. Sandra A. Bilinsky

On December 17, 1998, Dr. Bilinsky reviewed Rice's claim file and completed a "Physical Residual Functional Capacity Assessment" form. Dr. Bilinsky concluded that Rice could lift 25 pounds frequently and 50 pounds occasionally. She indicated that Rice could stand or sit for a total of six hours per eight-hour workday, but also noted that Rice's attending physician suggested that Rice needed to alternate between sitting and standing to relieve the pain. Dr. Bilinsky further indicated that Rice could climb, balance, stoop, kneel, crouch, or crawl occasionally, but that Rice should avoid concentrated exposure to heights. She further noted that Rice could walk unassisted and had a normal range of motion. Moreover, the doctor twice indicated that there was no evidence of panvertible muscle spasm. Dr. Bilinsky, pointing out that "pain has been considered in this evaluation," then concluded that Rice could perform medium work activity. Dr. James Graham affirmed Dr. Bilinsky's assessment on December 17, 1998.

### C.  Outcome of the proceedings

On February 9, 2000 the ALJ issued an opinion denying Rice's applications. Specifically, the ALJ found that step one was satisfied as Rice had not been employed since the onset of the alleged disability. Second, the ALJ implicitly found that her impairment was sufficiently severe and proceeded to step three, where he determined that her impairments did not meet or equal those in the listing of impairments. Reaching step four, the ALJ noted that Rice's subjective allegations regarding her pain and limitations were not fully credible. Although the ALJ concluded that she could not return to her former work, he ultimately determined at step five that she could perform medium work and was not, therefore, entitled to benefits.

The Appeals Council denied Rice's subsequent request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. The district court affirmed on August 13, 2003, and Rice now appeals.

## II.  Analysis

### A.  Standard of review

We review the Commissioner of Social Security Administration's decision to deny benefits to determine whether it was supported by substantial evidence or is the result of an error of law. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). Evidence is substantial when it is sufficient for a reasonable person to conclude that the evidence supports the decision. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). In our review of the ALJ's decision, we will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] own judgment for that of the Commissioner." *Lopez*, 336 F.3d at 539; *see also Clifford*, 227 F.3d at 869. And while the ALJ must have built a "logical

bridge from the evidence to his conclusion[,]" *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002), we will nonetheless "give the opinion a commonsensical reading rather than nitpicking at it," *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (quoting *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999)).

The main thrust of Rice's argument on appeal is that the decision by the ALJ is not supported by substantial evidence because the ALJ ignored or misstated significant medical findings in the record. We disagree.

## B.  ALJ's determination at step 3

Rice first complains that because the ALJ did not expressly mention Listing 1.05(C)[4] of the listing of impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, § 1.05(C) (1999), which Rice admits was the only listing relevant to her applications, we must reverse and remand. Listing 1.05(C) provides:

> other vertebrogenic disorders (e.g., herniated nucleus puplosus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
>
> 1. Pain, muscle spasm, and significant limitations of motion in the spine; and
>
> 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

---

[4]  Listing 1.05(C) was rescinded effective February 19, 2002. Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed. Reg. 58,010 (Nov. 19, 2001). Because Listing 1.05(C) was the listing in effect at the time of the ALJ's decision, it is the only listing we need now consider.

The applicant must satisfy all of the criteria in the Listing in order to receive an award of disability insurance benefits and supplemental security income under step three. *Pope v. Shalala*, 998 F.2d 473, 480 (7th Cir. 1993), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999).

A plethora of subjective and objective evidence demonstrates that Rice suffers from pain and sensory and reflex loss. However, record evidence also reveals that Rice did not meet *all* of the criteria of Listing 1.05(C), as required. It is sufficient to note that the entire medical record contains only reference to muscle spasms, a cursory mention in Dr. Kelly's otherwise thorough and voluminous medical records. And Dr. Bilinsky affirmatively indicated that Rice did *not* suffer from any muscle spasm. Furthermore, the record contains no evidence of *significant* motor loss. In 1998, Dr. Patel reported that she could ambulate without assistance and in 1999, Dr. Kelly reported that her gait was only "slightly antalgic." This is insufficient to demonstrate that Rice met all of the criteria of Listing 1.05(C).

As to Rice's argument that the ALJ's failure to explicitly refer to the relevant listing alone necessitates reversal and remand, we have not yet so held and decline to do so here. *See Steele*, 290 F.3d at 940. Moreover, given that Rice's attorney and the vocational expert who testified at the November hearing both referred only to Listing 1.05(C) (and because Rice concedes that Listing 1.05(C) is the sole listing applicable to her), we can safely conclude the ALJ considered and applied the appropriate listing, although he nowhere expressly referred to it in his February decision.

Mirroring her arguments as to the ALJ's step five analysis, Rice also attempts to bolster her argument that the ALJ's step three analysis was fatally flawed by characterizing it as "perfunctory." We have recently held that where an ALJ omits reference to the applicable listing and provides nothing more than a superficial analysis, reversal and remand is required. *See Brindisi v. Barnhart*, 315 F.3d 783,

786-87 (7th Cir. 2002); *Scott v. Barhart*, 297 F.3d 589, 595-96 (7th Cir. 2002); *Steele*, 290 F.3d at 940-41. But we do not find the ALJ's reasoning in Rice's case to be perfunctory.

The ALJ discussed Rice's "severe physical impairments" in detail and referred to numerous specific exhibits. He discussed her 1985 and 1988 surgeries, her 1994 fall, and the objective evidence of disc degeneration and disc herniation from 1995 and 1998. The ALJ also summarized the opinions of Drs. Patel and Kelly. He noted the use of epidural steroid injections, Darvoset, and Tylenol-3 to treat Rice's pain. He recounted Rice's course of physical therapy treatment. In addition, the ALJ summarized Rice's subjective statements regarding her pain and assessed her credibility. We have long held that an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence," *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995), and we find that the ALJ's determination with respect to step three was supported by substantial evidence.[5]

## C.  ALJ's determinations at step 5

The ALJ concluded at step five that Rice was able to perform medium work and was therefore not disabled. Rice's complains that the ALJ impermissibly relied upon the opinions of Drs. Bilinsky and Graham, the Social Security Administration state agency doctors who deter-

---

[5]  Because it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five, *cf. Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985) (refusing to require an ALJ to lay out his determinations and supporting reasoning in a "conclusion" section, as opposed to a "discussion" section, and calling any such requirement a "needless formality"), we consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five.

mined Rice's RFC, failed to treat her testimony properly, and omitted discussion of crucial pieces of evidence. We address each of these arguments in turn.

The ALJ's residual functional capacity determination was consistent with the opinions of Drs. Bilinsky and Graham. The ALJ was entitled to rely upon their opinions. 20 C.F.R. § 404.1527(f)(2)(i); *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). More importantly, there is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ. Dr. Patel's oblique note that Rice could not "lift" and that sitting and walking for more than one-half hour worsened her pain is the only opinion arguably more restrictive than the ALJ's residual functional capacity conclusion. But Dr. Patel's clinical findings were negative, (R. 10 at 298-99), and hence, the limitations on lifting, sitting, and walking were presumably based upon Rice's subjective complaints. And medical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints. *See Farrell v. Sullivan*, 878 F.2d 985, 989 (7th Cir. 1989) (citing 20 C.F.R. pt. 404, subpt. P, App. 1 § 1.00(B)).

We next address Rice's protestation that the ALJ mischaracterized her testimony in unfavorably concluding that she was not credible. There is no basis in the record for this assertion. In his assessment of Rice's credibility, the ALJ properly considered the degree to which the objective medical evidence supported the degree of severity of Rice's subjective complaints; Rice's daily activities; the duration, frequency, and intensity of the pain; the precipitating and aggravating factors; medications taken; and treatment. *Scheck*, 357 F.3d at 703 (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). All of the ALJ's analysis is amply supported by the hearing record, and Rice's argument amounts to nothing more than a dislike of the ALJ's phrase-

ology. As such, we see no reason to overturn the ALJ's eminently reasonable credibility determination, particularly given that as a factual finding, credibility determinations are due special deference. *Id.*

Rice also lists items of evidence that the ALJ did not specifically mention in his decision. However, an ALJ need only "minimally articulate his or her justification for rejecting or accepting specific evidence of a disability." *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988), cited in *Scheck*, 357 F.3d at 700. As we pointed out previously, the ALJ need not provide a written evaluation of every piece of evidence. *Diaz*, 55 F.3d at 308. And just as we held above with respect to step three, we find that the ALJ satisfied his minimal duty to articulate his reasons and make a bridge between the evidence and the outcome as to his step five determination. To summarize, we conclude that the ALJ's step five determination was supported by substantial evidence.

### D.  Circuit Rule 30 violation

One final matter deserves our attention. Despite Circuit Rule 30(b)(3), which requires every appellant to include with the brief a copy of "all the opinions, orders, findings of fact and conclusions of law rendered in the case by administrative agencies . . . whether the original review of the administrative decision is in this court or was conducted by the district court[,]" Rice's brief included only the district court's opinion and judgment, omitting the ALJ's decision. Counsel also filed a statement under Circuit Rule 30(d) incorrectly certifying that all materials required by Rule 30(a) had been included. When this omission was drawn to the attention of Rice's lawyer at oral argument, he was unable to offer any excuse other than sheer oversight. This violation is, by itself, enough to yield summary affirmance.

*In re Dorner*, 343 F.3d 910, 915 (7th Cir. 2003) (citing *Mortell v. Mortell Co.*, 887 F.2d 1322, 1326-27 (7th Cir. 1989)); *Urso v. United States*, 72 F.3d 59, 61-62 (7th Cir. 1995). *See also Snipes v. Ill. Dept. of Corr.*, 291 F.3d 460, 463-64 (7th Cir. 2002).

### III.  Conclusion

For the foregoing reasons, although we sympathize with Ms. Rice due to her indubitably trying condition, the district court's judgment is AFFIRMED.

ROVNER, *Circuit Judge*, concurring in the judgment.  I agree that the case may be summarily affirmed on the basis of the inadequately explained Circuit Rule 30 violation and I therefore concur in the judgment.  As for the merits of the case, I cannot agree that the ALJ's decision was supported by substantial evidence.  The ALJ's "reasoning" was thin at best, and contained a substantial error that even the SSA acknowledged on appeal.  In footnote 12 of the response brief, the Commissioner explains that the ALJ's finding that Rice was capable of medium work is not consistent with the medical opinion advanced by the State's own doctors.  The agency doctors opined that Rice could only *occasionally* climb, balance, stoop, kneel, crouch and crawl.  For medium work, a person must be capable of *frequent* stooping and crouching.  Nonetheless, the agency doctors concluded, contrary to the agency's own regulations, that Rice was capable of medium work, and the ALJ adopted this unsupported conclusion.  The Commissioner urged us to find this error harmless because the agency doctors' opinions would

support a finding that Rice could perform light work, and thus was not disabled. Given the medical record documenting Rice's severe spinal disorder and accompanying pain, as well as the analytical error overlooked by both the agency doctors and the ALJ, I have no confidence that the agency doctors or the ALJ properly analyzed Rice's residual functional capacity. Because I would find that the ALJ's decision was not supported by substantial evidence, I respectfully concur in the judgment.

A true Copy:

      Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*