**La Frances ROSS, Plaintiff–Appellee,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant–Appellant.**

**No. 03–4166.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 8, 2004.

Decided Dec. 22, 2004.

Barry A. Schultz, Evanston, IL, for Plaintiff–Appellee.

Tara Grove, Department of Justice Civil Division, Appellate Section, Washington, DC, for Defendant–Appellant.

Before BAUER, MANION, and KANNE, Circuit Judges.

## ORDER

La Frances Ross filed an application for disability and supplemental security benefits in December 2000. She appeals from a decision of the District Court for the Northern District of Illinois remanding a decision of an Administrative Law Judge of the Social Security Administration (the "SSA") to deny her disability benefits. The Commissioner of the SSA has appealed the district court's decision. We reverse.

### I.

In her application for disability and supplemental security benefits, La Frances Ross, forty-six at the time, claimed she suffered from hypertension, diabetes mellitus, peripheral vascular disease, and carpal tunnel syndrome. Ross claimed that she had been disabled since September 1, 2000.

Prior to her claimed disability, Ross worked as a hairdresser. She quit the work in the fall of 2000. From March 2002 through at least the time of her benefits hearing in this matter, Ross helped manage a friend's hair salon for twenty hours a week at $75 per week. The work involved answering the phone, ordering products, and making sure the salon ran smoothly.

Ross never graduated from high school; she only completed the tenth grade. In employment applications, and in her initial application for disability benefits, however, Ross claimed that she had completed high school. Ross testified that she exaggerated her education level on job applications "so [she] would get hired for the job[s]."

Ross has a significant number of personal responsibilities including caring for two foster children. She does a number of household chores including cooking, ironing, and the laundry. She does not do all of the chores and testified that she could not mop the floors, move furniture, or carry large pots. Her children carry the laundry to the washer and dryer and carry away the clothes when they are clean. Ross does not do any yard work and relies on a neighbor to do this work for her. Ross also has a neighbor come over once a month to help fully clean her house.

During late 2000 and early 2001, Ross underwent a battery of tests that confirmed that she suffered from carpal tunnel syndrome. In August 2001, Dr. Fatoki, Ross's treating physician, observed that Ross complained of worsening pain in her hands and that Ross appeared to be experiencing "paresthesia," a condition where a person feels tingling or burning in her hands, often without any external reason. W.A. Newman Dorland, *Dorland's Illustrated Medical Dictionary* 1324 (29th ed. 2000). Dr. Fatoki concluded that Ross's condition might require surgery.

Ross had carpal tunnel release surgery on her right hand in January 2002. Shortly after the surgery, Ross reported that she was doing better and that the paresthesia had subsided. At the benefit hearing, however, Ross testified that the pain in her right hand had worsened and that she was experiencing increasing pain in her left hand.

The ALJ conducted a disability hearing in June 2002. In addition to Ross's testimony, the ALJ heard from a vocational expert, Michelle Peters. The ALJ asked Peters what kind of work a person with Ross's education, work experience, and physical limitations could be expected to perform. Peters testified that Ross could not perform her past work but could perform jobs that were available in the national economy including telemarketer, information clerk, or security monitor.

The ALJ determined that Ross was not entitled to disability benefits. The ALJ concluded that, although Ross met three of the five sequential requirements for an award of benefits, she had the residual functional capacity ("RFC") to sit, stand, and walk six hours in an eight-hour work day, lift and carry ten pounds, and perform fine manipulation occasionally. The ALJ also concluded that Ross could not perform her past work as a hairdresser, but that she could perform other jobs existing in significant numbers in the national economy.

Ross filed a Request for Review of the ALJ's decision. On April 25, 2003, the Appeals Councils of the SSA refused the request. Ross then filed a complaint with the district court. On October 8, 2003, the district court remanded Ross's claim to the SSA for further consideration. The district court concluded that "the ALJ fail[ed] to indicate what evidence in the medical records led him to his conclusion." *Ross v. Barnhart*, 2003 WL 22317431, No. 03 C 3255, slip op. at 5 (N.D.Ill. Oct. 9, 2003) (citing *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir.2000) (stating that an "ALJ must build an accurate and logical bridge from the evidence to the conclusions.")). This appeal followed.

## II.

Our review of a district court's decision in Social Security disability benefits cases is *de novo*. *Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir.1999). We do not defer to the district court's factual or legal conclusions. *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir.1998). Like the district court we are concerned with whether substantial evidence supported an ALJ's decision concerning the award of benefits. 42 U.S.C. § 405(g); *Lopez ex. rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir.2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir.2001) (citing *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir.2001)).

The five-step process for determining whether an applicant is entitled to disability benefits has been set forth in detail in a number of previous decisions of this court. For simplicity's sake, we repeat the relevant portion of this court's decision in *Rice v. Barnhart*, 384 F.3d 363 (7th Cir.2004).

To be eligible for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(I), 423, and supplemental security income under Title XVI of the Act, §§ 1382, 1382c, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 432(d)(1)(A), 1382c(a)(3)(A). The Commissioner of the Social Security Administration uses a five-step sequential analysis to ascertain whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f); *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir.2001). Steps one and two are threshold determinations and assess

first, whether a claimant is not presently working, and second, whether the complained of impairment(s) are of the required duration and significantly limit the claimant's ability to work. 20 C.F.R. §§ 404.1520(a)-(c), 416.920(a)-(c). In step three, evidence demonstrating the claimant's impairments is compared to a list of impairments presumed severe enough to preclude any gainful work. *See* 20 C.F.R. pt. 404, subpt. P, App. 1 ("listing of impairments"). Where an impairment meets or equals one of the listed impairments, the claimant qualifies for benefits and no further inquiry is necessary. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant is not able to qualify for benefits under step three, the analysis proceeds to steps four and five. The fourth step requires an assessment of whether the claimant's residual functional capacity will allow the claimant to pursue her past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). Where the impairment precludes the performance of past work, the claimant's RFC, age, education, and work experience are considered to determine if other work exists that would accommodate the claimant. 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Rice,* 384 F.3d at 365.

This case is about the ALJ's determination of Ross's RFC. "The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir.2004); *see also* 20 C.F.R. § 404.1545(a)(1). In considering a claimant's RFC, an ALJ is expected to take into consideration all relevant evidence, both medical and non-medical. 20 C.F.R. § 404.1545(a)(3). Although medical

evidence, when presented, is certainly important, "[t]he determination of RFC ... is an issue reserved to the SSA," and an ALJ need not consider a medical opinion conclusive. *Diaz v. Chater,* 55 F.3d 300, 306 n.2 (7th Cir.1995) (citing 20 C.F.R. §§ 404.1527(e)(2) & 416.927(e)(2)).

A claimant's RFC is an important consideration in the fourth and fifth steps of the disability benefits analysis.[1] The SSA does not contend, however, and the ALJ did not find, that Ross's RFC would allow her to return to work as a beautician (step four of the analysis). At issue then is Ross's RFC as it plays into the mix of factors considered when determining whether work exists in the national economy that Ross could perform (step five of the analysis).

 As we indicated above, the ALJ determined that Ross had the capacity to sit, stand, and walk six hours in an eight-hour work day, lift and carry ten pounds, and perform fine manipulation occasionally, but could not perform repetitive grasping/gross manipulation. The ALJ also concluded that Ross must have the option in an employment setting to sit and stand at will.

The only RFC for Ross suggested by a physician was provided by a state agency physician who had not examined her. The state physician's report concluded that Ross could occasionally lift and/or carry no more than fifty pounds and frequently lift and/or carry more than twenty-five pounds. The report also concluded that Ross could stand and/or walk for approximately six hours in an eight-hour workday. Further the report concluded that Ross could also sit for about the same time.

---

1. The ALJ found that Ross qualified for benefits under steps one and two of the analysis but did not meet the requirement of benefits under step three of the analysis (thus requir-

ing consideration of steps four and five). The ALJ's determination with respect to these first three steps is not at issue in this case.

Ross's physicians did not suggest limitations on her capability to perform work. Instead, it appears that Ross relied primarily on her own testimony to establish her physical limitations. For instance, Ross stated that she could carry only a five-pound bag of potatoes and even then her hands hurt from the experience. Ross also testified that she had problems standing and needed to sit down from time to time. As an example, Ross stated that she had to stop and rest on her walk to the disability hearing because of the pain in her legs. Finally, as stated above, Ross recited the limitations on her household chores—she could not carry laundry up stairs, mop, move furniture, or wash and lift large pots.

The ALJ rejected the state physician's RFC recommendation. The ALJ determined that medical evidence provided by Ross's physicians undercut the state physician's RFC recommendation. Thus, the ALJ concluded that Ross had an RFC sufficient to perform only a limited range of light work. In other words, the RFC determination reached by the ALJ, while not as favorable as Ross might have hoped, was more favorable to Ross than the RFC suggested by the state physician.

The ALJ's RFC determination was supported by substantial evidence. The ALJ's conclusion that Ross could sit, stand, and walk for up to six hours in an eight-hour workday was supported by Ross's testimony that she performed household chores and worked at least part of the day at her friend's hair salon. Moreover, the ALJ significantly tempered this conclusion when he determined that she must be accommodated with a sit/stand option. This determination directly addressed Ross' testimony that she found it necessary to sit down after being on her feet for more than an hour or so at a time.

■ There was also substantial evidence, most notably Ross's own testimony, supporting the ALJ's conclusion that Ross could perform occasional fine manipulation but could not perform repetitive grasping/gross manipulation. As mentioned above, Ross testified that she performed most of her own household chores including ironing and cooking. A claimant's daily activities can be considered in determining her RFC. 20 C.F.R. §§ 404.1545(a)(3) & 404.1529(c)(3)(I).

■ Finally, there was substantial evidence to support the ALJ's conclusion that Ross could lift and carry up to ten pounds. On this point, the ALJ was required to reconcile conflicting evidence. The state physician's RFC assessment suggested that Ross could occasionally lift and carry up to fifty pounds and frequently lift and carry up to twenty-five pounds. Ross, however, testified that she could only lift and carry up to five pounds. Neither evidence was particularly compelling. The ALJ had already discounted the state physician's RFC evidence in light of later medical evidence. In addition, the ALJ made a specific finding that Ross's credibility was "questionable" in light of her lying on job applications. *Skarbek v. Barnhart,* 390 F.3d 500, 504–505, slip op. at 7 (7th Cir.2004) ("This Court will affirm a credibility determination as long as the ALJ gives specific reasons that are supported by the record for his finding."). This demonstrated to the ALJ that Ross would lie to get something she wanted.

Faced with radically different estimations of Ross's lifting abilities, the ALJ resolved the conflict largely, but not entirely, in favor of Ross. This was appropriate. Having determined that Ross's credibility was questionable, it was not unreasonable for the ALJ to conclude that although Ross was unable to lift and carry the weight suggested by the state phy-

sician, she was able to carry more than her own testimony suggested.

■ We disagree with the district court's conclusion that the ALJ failed to indicate what medical evidence supported his conclusion. As we noted above, Ross did not introduce medical evidence to support her proposed conclusion that she was incapable of work. The medical evidence Ross introduced supports her conclusion that she suffers certain medical problems. It does not suggest to what extent these conditions limit her RFC. For instance, Ross did not have a treating physician opine as to how much Ross could lift and carry, or how long Ross could sit, stand, or walk. Instead, Ross relied on her own testimony concerning her daily activities to establish her RFC. The ALJ, as we also noted above, is expected to take into consideration medical and non-medical evidence when making an RFC determination. The ALJ did so in this case. The source for his RFC determination is evident: Ross's testimony.

■ In her brief, Ross also argues that the vocational expert's testimony was insufficient to support the ALJ's determination. Ross did not raise this issue before the district court, however, and it is, therefore, waived. *Shramek v. Apfel,* 226 F.3d 809, 811 (7th Cir.2000).

■ Ross also argues that the SSA Appeals Council committed an error of law when it failed to remand her case in light of additional evidence. In filing an appeal with the Appeals Council, Ross had included a letter and accompanying notes from Dr. O.B. Mackie. In the letter, dated March 19, 2003, Dr. Mackie stated that Ross had been under his care for a year and that Ross had persistent pain and numbness in her hands that makes "repetitive or simple daily chores extremely painful." The letter also notes that Ross "had

completed physical therapy with minimal success."

Generally, this court does not review the decision of the Appeals Council to deny review of an ALJ's disability determination. *Damato v. Sullivan,* 945 F.2d 982, 988–89 (7th Cir.1991). If the Appeals Council denies review, the decision of the ALJ becomes the final decision of the SSA and it is that decision that is subject to judicial review. *Id.* If, however, the Appeals Council's decision to deny review rested on a legal error, this court (and the district court) can consider the denial of review. *Eads v. Sec'y of the Dept. of Heath & Human Srvs,* 983 F.2d 815, 817 (7th Cir.1993). An example of a review for legal error is where evidence is submitted for the first time to the Appellate Council and the Council decides that the evidence "was not 'new' or 'material' within the meaning of the governing rules." *Perkins v. Chater,* 107 F.3d 1290, 1294 (7th Cir. 1997).

Review of the Appeals Council's decision to deny review in this case is not appropriate. The Appeals Council did not determine in this case that the evidence submitted by Ross was immaterial. In fact, the Appeals Council really gave no definitive reason why it decided to deny review other than that there was "no reason under our rules to review the [ALJ]'s decision." There is, therefore, no indication that the Appeals Council found the new evidence submitted by Ross either material or immaterial. This is not a problem, however. The Appeals Council is not required to give any reason for its decision to deny review. *Damato,* 945 F.2d at 989 ("[T]he Appeals Council may deny review without articulating its reasoning.").

## III.

There was substantial evidence to support the ALJ's determination that Ross

was not entitled to disability benefits. The ALJ recited the evidence supporting his conclusion; therefore the district court should not have remanded the case. In addition, Ross's argument concerning the testimony of the vocational expert is waived. Finally, it is not appropriate for this court to review the decision of the Appeals Council to deny review. The decision of the district court is

REVERSED.