NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 23, 2014[*]
Decided May 27, 2014

**Before**

ANN CLAIRE WILLIAMS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 13-2755

| | |
|---|---|
| ROBERT CARTER, <br> *Plaintiff-Appellant,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 12-1129 |
| CAROLYN W. COLVIN, <br> Acting Commissioner of Social Security, <br> *Defendant-Appellee.* | Michael M. Mihm, <br> *Judge.* |

**O R D E R**

Robert Carter, a 56 year-old who suffers from depression and abuse of alcohol and cocaine in remission, appeals the district court's judgment upholding the denial of his application for Disability Insurance Benefits and Supplemental Security Income. Carter argues that the record belies the administrative law judge's determination that

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

he was "malingering"[1] before his date last insured and that the ALJ improperly discredited his testimony regarding the severity of his impairments. Because substantial evidence supports the ALJ's conclusion that Carter was not disabled, we affirm.

The earliest reports in the administrative record of Carter's mental health date back to 1998, when he was transferred from Cook County Jail to Chester Mental Health Center for an evaluation of his fitness to stand trial on charges of burglary, escape, and violating probation. He reported to doctors at Chester that he had five prior psychiatric hospitalizations and that he was hallucinating. But a prison psychiatrist discredited Carter's reports of hallucinations and concluded that, although he had a history of polysubstance dependence and antisocial personality disorder, he was "obviously" malingering. He was found fit for trial.

In 2006 Carter, released on parole just days earlier, was hospitalized after reportedly experiencing a nervous breakdown and a "major relapse" in substance abuse. He was diagnosed with a mood disorder induced by alcohol and cocaine, dependence on alcohol and cocaine, and antisocial personality disorder, and prescribed anticonvulsant and antipsychotic medications.

Back in prison a year and a half later, Carter reported hallucinations and depression. A prison psychiatrist discounted Carter's "report of psychotic features" as "somewhat self serving and strongly suggestive of exaggeration" and speculated that Carter's "motivation for partial malingering might be to obtain hypnotic medication" or Supplemental Security Income. For the next several months until his release from prison, Carter was prescribed an antidepressant, which he later told medical staff was "doing me a lot of good."

Soon after his release, Carter applied for Social Security benefits, alleging that he had become disabled as of January 1997 because of depression, a nervous breakdown, and "emotional instability." He completed and submitted a report in support of his application describing his difficulty concentrating and following instructions. In connection with his application, Carter underwent a mental status examination and

---

[1] "Malingering" is defined in the DSM-V as the "intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as avoiding military duty, avoiding work, obtaining financial compensation, evading criminal prosecution, or obtaining drugs." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 726 (5th ed. 2013).

reported experiencing "severe depression" and frequent hallucinations (several per day). The state-examining psychologist concluded that Carter had severe major depressive disorder, alcohol and cocaine abuse in remission, and antisocial personality disorder.

In 2009 Carter's application for benefits was denied initially and on reconsideration.

Later that year a psychologist consulting for the Social Security Administration assessed Carter's functional limitations and concluded that there was insufficient evidence to assess the severity of Carter's impairments before 2000, his date last insured. The psychologist described Carter's impairments after 2000 as severe but noted that "several sources have questioned the veracity" of Carter's symptoms and that Carter had the mental residual functional capacity to perform unskilled tasks on a sustained basis.

Carter was again incarcerated in 2011, when he had a video hearing before an ALJ and testified about his mental limitations. He said that he could not function without his medication, which helped stabilize his mood and control his anger. Because he was depressed, he told the ALJ, he had a "hard time getting up and moving around sometimes." He testified further that he did construction work in 2007 until his employer discovered his criminal background and fired him. Testimony was also presented by a vocational expert, who was asked about work available to a hypothetical claimant of Carter's age with a high school education and no past relevant work, who could perform simple tasks, interact superficially with coworkers and supervisors but not with others, and tolerate minor changes in routine. The vocational expert opined that such a claimant would be able to work as a machine feeder, marker, or fastener. However, the vocational expert added that this claimant would not be competitively employable if he could not concentrate or work persistently throughout a two-hour period.

The ALJ applied the five–step evaluation process and denied Carter's application for Disability Insurance Benefits and Supplemental Security Income. *See* 20 C.F.R. §§ 404.1520, 416.920. The ALJ concluded that Carter had not worked since his alleged onset date (step 1); his major depressive disorder and abuse of alcohol and cocaine in remission were severe impairments, but he did not show that he had those impairments

before his date last insured[2] (step 2); his impairments or combination of impairments did not meet or equal a listed impairment (step 3); he did not have any past relevant work, but had the residual functional capacity to work at all exertional levels with some limitations (that he perform simple, routine, repetitive tasks; make simple decisions; interact only superficially with coworkers and supervisors but not with the public; and experience only minor changes in routine) (step 4); and suitable jobs were available in the national economy, including work as a machine feeder and fastener (step 5). In addressing step 4, the ALJ discredited Carter's allegations of disabling limitations, pointing out that Carter was able to work for several months as a construction laborer until being fired for non-medical reasons; he was able to participate in the hearing closely and fully without being distracted; he had been malingering, in the opinion of treating psychiatrists; and his symptoms had significantly improved with routine and conservative treatment.

After the Appeals Council denied review, Carter sought judicial review, 42 U.S.C. §§ 405(g), 1383(c)(3), arguing that the ALJ erred at step 2 by finding him not disabled before his date last insured. Carter asserted that the record contained nearly 200 pages of medical evidence and that the ALJ failed to consider submissions from either the state-examining psychologist or a prison counselor corroborating that he was depressed.

The district court upheld the ALJ's decision. The ALJ did not err at step 2, the court determined, because the only record evidence predating Carter's date last insured showed that—despite his history of mental-health issues—he had been found to be malingering and fit to stand trial. Further, neither the psychologist's report nor the counselor 's submission (which was not part of the administrative record) suggested that Carter had disabling limitations or otherwise undermined the ALJ's conclusion that Carter was not disabled.

Carter maintains on appeal that the ALJ erred at step 2 in finding that the evidence predating his date last insured did not show that he was disabled. In one of his appellate briefs, he attaches new documents—hospital-discharge summaries and a psychiatric evaluation—showing that in 1985, 1988, and 1994 he was diagnosed with

---

[2] This finding rendered him ineligible for Disability Insurance Benefits but not Supplemental Security Income, which is available to people with disabilities who have low income and few assets, regardless of their work history or insured status. *See* 42 U.S.C. § 1382(a).

bipolar disoder, hallucinosis, schizoaffective disorder, and schizophrenia. But we will not review evidence that was not before the ALJ. *See* 42 U.S.C. § 405(g); *Rice v. Barnhart*, 384 F.3d 363, 366 n.2 (7th Cir. 2004). As the district court found, the only record evidence predating Carter's date last insured was medical reports confirming his fitness to stand trial. Although those reports also reflect Carter's diagnoses of substance dependency and antisocial personality disorder, they do not suggest that those impairments were disabling. Substantial evidence thus supports the ALJ's determination that Carter is not entitled to Disability Insurance Benefits. *See* 42 U.S.C. § 416(I).

Carter next argues, for the first time on appeal, that the ALJ's credibility determination was flawed because the ALJ used "boilerplate" that we have repeatedly criticized: "[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *See, e.g., Bjornson v. Astrue*, 671 F.3d 640, 644–46 (7th Cir. 2012); *Martinez v. Astrue*, 630 F.3d 693, 694 (7th Cir. 2011); *Parker v. Astrue*, 597 F.3d 920, 921–22 (7th Cir. 2010). But this boilerplate does not necessarily undercut the ALJ's decision; we will uphold the ALJ's credibility determination if the ALJ provided specific and legitimate reasons for discrediting the claimant's testimony. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). The ALJ here disbelieved Carter's testimony for a number of legitimate reasons, including the repeated opinions of psychiatrists that Carter was malingering; Carter's demeanor at the video hearing; and Carter's request to a doctor—two months after applying for Social Security benefits—seeking medical verification that he was "mentally cleared to work." *See Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) (demeanor); *Powers v. Apfel*, 207 F.3d 431, 435–36 (7th Cir. 2000) (same).

Finally, Carter has filed a motion to supplement the record with a document from the Cook County Department of Corrections verifying that, contrary to his testimony that he worked in 2007, he was in fact incarcerated at that time and thus unable to have worked. But again, we will not review evidence that was not before the ALJ. *See* 42 U.S.C. § 405(g); *Rice*, 384 F.3d at 366 n.2. Thus, we **DENY** Carter's motion to supplement the record.

We have reviewed Carter's remaining contentions, and none has merit.

**AFFIRMED**.